## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

Reyes Cabrera, #265665,          ) C/A No.: 1:09-2801-TLW-SVH
                                  )
          Petitioner,          )
                                    )
  vs.                        ) REPORT AND RECOMMENDATION
                                    )
Michael McCall, Warden          )
                                  )
          Respondent.       )
                                  )

Petitioner Reyes Cabrera a/k/a Reyes Cabrera Pena a/k/a Reyes Caberra filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry ##17, 18]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #19]. Petitioner filed a response in opposition to Respondent's motion. [Entry #21]. Having carefully considered the parties' submissions and the record in this case, the court finds that Respondent's motion for summary judgment should be granted.

## I.    Procedural Background

Petitioner was indicted in Spartanburg County for murder, possession of a firearm during the commission of a violent crime, and three counts of pointing and presenting a firearm. App.  403. On April 10, 2000, his case was called to a jury trial before the late

Honorable Wyatt T. Saunders, Jr. He was represented by Michael Morin, Esquire, but subsequently proceeded pro se. The Spanish interpreter was John Morton. App. 2. On April 12, 2000, Petitioner was found guilty as charged and sentenced to life imprisonment for murder, and a five-year concurrent term for pointing and presenting a firearm.

Petitioner filed a Notice of Appeal and was represented on appeal by Assistant Appellate Defender Robert M. Dudek. The South Carolina Court of Appeals filed an opinion affirming Petitioner's convictions and sentence on May 20, 2002. *State v. Cabrera-Pena*, 567 S.E.2d 472 (S.C. App. 2002). On June 20, 2002, Petitioner filed a Petition for Rehearing, which the Court of Appeals denied on August 23, 2002.

Petitioner then filed a Petition for Writ of Certiorari to the South Carolina Supreme Court on October 24, 2002. On April 25, 2003, the Supreme Court granted certiorari and established a briefing schedule. After oral argument on February 3, 2004, the South Carolina Supreme Court entered an order on November 8, 2004, reversing in part and affirming in result. *State v. Reyes Cabrera-Pena*, 605 S.E.2d 522 (S.C. 2004). The Remittitur issued on November 24, 2004.

Petitioner filed a pro se Post-Conviction Relief ("PCR") Application (05-CP-42-67) on January 10, 2005. The Honorable Kenneth Goode held an evidentiary hearing on the PCR on January 19, 2007. Petitioner testified at the hearing and was represented by Stephen F. Fisher, Esquire. By Order dated December 10, 2007, Judge Goode denied PCR relief. Petitioner's pro se Rule 59 motion was subsequently denied.

Petitioner appealed to the South Carolina Supreme Court, and was represented on appeal by Caroline M. Horlbeck, Esquire, who filed a Petition for Writ of Certiorari.

By order dated March 18, 2009, the South Carolina Supreme Court denied certiorari. The Remittitur issued on April 3, 2009. This habeas petition followed.

## II.     Discussion

### A.     Factual Background/Trial Testimony

At the time of the events leading to the underlying charges, Petitioner was separated from his estranged wife, Alma. On the evening of June 30, 1999, Alma was at an Applebee's restaurant with her two-year-old daughter and several friends when Petitioner entered the restaurant and approached their table. App. 967, 166. After Alma and Petitioner went outside the restaurant and argued, (App. 100, 122, 166–67), Petitioner left the restaurant, (App. 100, 167), purchased a gun, loaded it, and returned to the parking lot to wait for Alma to exit. Some two hours later, when Alma, her daughter, and her three friends left the restaurant, Petitioner was waiting in his van in the parking lot. He called Alma over to his van, showed her the gun and then walked her back over to the truck where the friends were standing, prompting Alma to motion to them that he had a gun. After another argument, Petitioner shot Alma at point blank range, killing her. App. 117–18, 125. Petitioner then pointed the gun at each of the three friends' heads before driving off. App. 113–14, 147, 313. He was arrested a short while later, and was advised of his Miranda rights both in English and in Spanish. App. 251–52, 256. After affirming that he understood his rights, and before the police could ask him any questions,

Petitioner blurted out, "I'm guilty. I fully accept everything that had happened and I'm responsible for it." App. 256. He explained to the police that he had purchased a gun after he initially left Applebee's, and corroborated the other witnesses' accounts of the shooting. App. 262–63 He told police that he threw the gun behind a fence near the crime scene after he shot Alma, (App. 264), and police recovered a loaded pistol there (App. 211). A forensics expert testified that the bullet removed from Alma's head during the autopsy was fired from the pistol recovered at the crime scene. App. 244–45.

The day before trial, Petitioner informed the court that he no longer desired the services of his appointed counsel and requested that the court appoint another lawyer and grant a continuance. App. 15. Petitioner's attorney told the court that he was prepared to try the case, (App. 20), and the court denied the motion for a continuance and explained to Petitioner that if he discharged his attorney he would be representing himself, and explained the dangers and ramifications of self-representation (App. 24). After two recesses to allow Petitioner to consider the matter, Petitioner informed the court that he desired to keep his appointed counsel. App. 27–28.

The following morning, Petitioner again informed the court that he was dissatisfied with his appointed counsel and that he no longer desired that he represent him. App. 31. The trial judge explained to him that if the court dismissed his attorney, Petitioner could not change his mind. App. 34. Although Petitioner continually told the court that he did not desire to represent himself (e.g., App. 55, 84, 199), at no point during the trial did he

state that he desired an attorney to represent him. During the trial, he reaffirmed that he did not desire an attorney. App. 72, 85.

B.   Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:**    Trial Court Error: Petitioner alleges the trial court erred in preventing him from introducing a self-serving portion of his written statement while cross-examining officer Membreno about oral statements he made to the officer during his custodial interrogation.

**Ground Two:**    Ineffective Assistance of Appellate Counsel: Petitioner alleges appellate counsel failed to raise the issue of error by trial court for denial of his continuance motion and failed to raise his unconstitutional waiver of counsel.

C.   Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

D.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision

that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>> (A)     the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (I) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[1] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application,

---

[1]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[2] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a

_____

[2]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

claim because of an earlier default in the state courts, the federal court honors that bar.

As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98

(1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.   Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### E.   Analysis

### 1.   Procedurally-Barred Grounds

Procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995).

Respondents have not asserted procedural default as to either of Petitioner's habeas grounds; therefore, a merits review on each is provided below.

### 2. Merits Review

#### a. Ground One

In Ground One, Petitioner alleges the trial court erred in preventing him from introducing a self-serving portion of his written statement while cross-examining officer Membreno about oral statements he made to the officer during his custodial interrogation. The South Carolina Supreme Court found that the trial court and Court of Appeals erred in their assessments of whether the statement was admissible, but concluded that any error was harmless.

A review of the record reveals that after he was Mirandized, Petitioner gave an oral, recorded statement to Officer Membreno concerning the events surrounding the shooting and confessed to having killed Alma. App. 260–64, 270. Petitioner then gave a written statement which included inconsistencies from the oral statement. App. 270–71.

After conducting a *Jackson v. Denno*[3] hearing, the trial judge admitted the statement into evidence. App. 46. The prosecutor then made a motion in limine to exclude self-serving portions of the statement from introduction through Officer

---

[3]In *Jackson v. Denno*, 378 U.S. 368, 376–378 (1964), the Supreme Court held that a criminal defendant has a constitutional due process right to litigate, at some stage of his criminal trial, whether his pretrial statement to law enforcement, sought to be introduced against him by the prosecution, had been voluntarily rendered and to have a fair hearing and reliable determination on that issue uninfluenced by the truth or falsity of the statement itself.

Membreno as hearsay, arguing they should not come in through the rule of completeness. *Id.* The court indicated that it would adhere to the rule of completeness in allowing all of the document to come in if any part was introduced. App. 49–50. The prosecutor called Officer Membreno to testify about Petitioner's oral statement. App. 253–64. He stated Petitioner had been given a written and oral statement after he was read his rights. App. 259–60. Petitioner said he told his wife that "we were supposed to be together again." App. 260–61. On cross-examination, Petitioner, proceeding pro se, initially sought to introduce a document, to which the prosecutor objected as being a self-serving declaration. App. 264–65.

After a brief discussion between the court and Petitioner about the objection, Petitioner decided to not ask any questions of Officer Membreno about the document. It appeared to the court that the portion of the document Petitioner wished to ask about was the portion in which he stated, "I do not know how she took the gun out of my pants pocket. I tried to grab and force her, but the gun went off and fired." The trial court found the statement to be self-serving and not a proper question for cross-examination. On redirect examination, the prosecutor developed that a written statement Petitioner gave to police included inconsistencies with the oral statement. App. 270. Specifically, Officer Membreno said that in his oral statement, Petitioner first stated that he wanted to get together with Alma, but in the written statement he claimed that Alma wanted to get together with him. App. 270–71. The Court of Appeals affirmed the judgment, finding Petitioner's statements to Membreno were not admissible under either Rule 106, SCRE,

or under case law.  In finding Petitioner should have been permitted to cross-examine Membreno concerning the remainder of what he said in his conversation during the interview, the South Carolina Supreme Court found the error harmless beyond a reasonable doubt, given the overwhelming evidence of guilt in the case.

As an initial matter, Petitioner fails to establish that he is entitled to federal habeas relief upon this claim. Even though otherwise exhausted, this is an issue of state law, and "[i]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (noting federal habeas corpus relief does not lie for errors of state law). Federal courts must afford states deference in their determinations regarding evidence and procedure. *Cf. Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted."). Further, even if the state court's admission of this evidence was error under state law, it is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) (citations and emphasis omitted).

Furthermore, Petitioner fails to establish that the South Carolina Supreme Court unreasonably applied federal law to this claim. Petitioner cannot establish that the South

Carolina Supreme Court was incorrect in denying relief upon this argument. The admission or exclusion of evidence falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Morris*, 656 S.E.2d 359, 368 (S.C. 2008).

A review of the record reveals that any error in excluding Petitioner's evidence, if it was error at all, was "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 23 (1967) (noting not all constitutional errors at trial necessitate automatic reversal). Constitutional errors are harmless only if the reviewing court is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Id.* at 24 (*discussing Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963)). Because the South Carolina Supreme Court found the trial court's error to be a "trial error," it "may [] be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante*, 399 U.S. 279, 307–08 (1991); *id.* at 309 (comparing "trial error," which may be harmless, with "structural" error—"structural defects in the constitution of the trial mechanism"—which cannot be analyzed by "'harmless-error' standards").

The alleged error concerned the presentation of evidence to the jury and did not affect the structural framework within which the trial occurred. *Cf. Satterwhite v. Texas*, 486 U.S. 249, 258 (1988) (finding admission of evidence in violation of defendant's right to counsel harmless error); *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (finding harmless error in limitation on cross-examination in violation of the defendant's right to

confront witnesses); *Moore v. Illinois*, 434 U.S. 220, 232 (1977) (finding harmless error in admission of identification evidence in violation of the defendant's right to counsel).

After reviewing the record and the relevant case law, the undersigned finds that the state Supreme Court did not unreasonable apply clearly established federal law or base its decision on an unreasonable application of the facts. 28 U.S.C. § 2254(d)(1)(2). Therefore, it is recommended that Ground One be dismissed.

b.      Ground Two

In Ground Two, Petitioner alleges two grounds of ineffective assistance of appellate counsel for (1) failing to raise the issue of error by trial court for denial of his continuance motion, and (2) failing to raise his unconstitutional waiver of counsel argument.

(1)      Failure to Appeal Denial of Continuance Motion

Petitioner's second claim alleges that appellate counsel was ineffective in failing to specifically raise a claim in the direct appeal concerning the trial court's denial of a continuance. Petitioner raised this issue in his state PCR proceedings, which the PCR Court denied.  At the PCR hearing, appellate counsel testified that he may have given some thought to a claim about the denial of a continuance, but he still considered the Rule 106 (the rule-of-completeness) issue the big one. PCR App. 89. He stated that he had never had any luck with denial of continuances claim and that the court's reversal for denial of continuances are as rare as the proverbial hen's teeth. *Id.*; *State v. McMillian*,

561 S.E.2d 602, 604 (S.C. 2002) (*citing State v. Lytchfield*, 95 S.E.2d 857, 859 (S.C.

1957)).  In denying the claim, the PCR court determined that:

> This Court finds appellate counsel's testimony to be credible and the
> Applicant's to be not credible. This Court finds that appellate counsel was
> not ineffective for failing to raise trial court error in the denial of
> Applicant's motion for continuance. Appellate counsel testified that he did
> not think that would have been a successful issue. He stated that the other
> issues he presented were much stronger issues. This Court finds that this
> motion is not a significant or obvious motion. This Court denies and
> dismisses this allegation.

PCR App. 110–11.

A defendant is constitutionally entitled to the effective assistance of appellate

counsel. *Evitts v. Lucey*, 469 U.S. 387 (1985). A PCR applicant has the burden of proving

appellate counsel's performance was deficient. *Anderson v. State*, 581 S.E.2d 834 (S.C.

2003). Appellate counsel is not required to raise every non-frivolous issue that is

presented by the record, *Tisdale v. State*, 594 S.E.2d 166 (S.C. 2004), as "[t]here can

hardly be any question about the importance of having the appellate advocate examine the

record with a view to selecting the most promising issues for review." *Jones v. Barnes*,

463 U.S. 745, 752 (1983). Rather, appellate counsel has a professional duty to choose

among potential issues according to their merit. *Id*.

To obtain relief a petitioner must show that appellate counsel's performance was

(1) deficient; and (2) prejudice from the appellate counsel's deficiency. *Southerland v.

State*, 524 S.E.2d 833 (S.C. 1999). In other words, the petitioner is required to

demonstrate "that his counsel was objectively unreasonable in failing to find arguable

issues to appeal" and that he was prejudiced—i.e., that there was "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citations omitted). *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("When a claim of ineffective assistance of counsel is based upon failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal."). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (finding counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims.").

Petitioner has failed to show any reasonable likelihood of success on the merits of the continuance claim. The granting of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed absent a clear showing of an abuse of discretion. *State v. Tanner*, 385 S.E.2d 832, 834 (S.C. 1989); *State v. Mansfield*, 538 S.E.2d 257, 260 (S.C. App. 2000); *State v. White*, 428 S.E.2d 740, 742 (S.C. App. 1993).

The undersigned recommends that this ground be dismissed.

Finally, Petitioner contends that his appellate counsel erred in failing to raise a claim of unconstitutional waiver of counsel. The record reveals that appellate counsel raised in the direct appeal before the Court of Appeals the issue of whether the trial judge erred in relieving trial counsel when the record indicated that Petitioner had voluntarily and intelligently waived his right to counsel. *State v. Cabrera*, Final Brief of Appellant, p. 3. The Court of Appeals denied relief on this claim, finding no right to hybrid representation.

At trial, the trial judge repeatedly explained, through a skilled interpreter: (1) that the trial would go on despite Petitioner's protestations; (2) that Petitioner had the right to represent himself or have his appointed counsel continue with his representation; (3) that self-representation was an unwise and disadvantageous route to take; and (4) once Petitioner came to a decision regarding his representation, there would be no chance to have appointed counsel resume his representation later in the proceedings. Petitioner acknowledged understanding each of the foregoing statements, and the trial court found Petitioner made a knowing and intelligent waiver of counsel. Respondent argues that allowing Petitioner to recall his attorney during the trial, after he had specifically waived his right to counsel, would have impermissibly resulted in hybrid representation, and the trial court acted within its discretion in prohibiting hybrid representation, even though Petitioner did not specifically ask for the re-appointment of counsel.

Petitioner protested throughout the trial that he was not participating and that he did not know how to represent himself, but these statements amounted to expressions of dissatisfaction with the legal system, not a request to withdraw his waiver of counsel. *See State v. Hyatt*, 513 S.E.2d 90, 94 (N.C. 1999) ("[T]o obtain relief from a waiver of his right to counsel, a criminal defendant must move the court for withdrawal of the waiver").

Petitioner fails to establish that the state courts unreasonably applied federal law to this claim or unreasonably determined the facts. To the extent that Petitioner is stating a Sixth Amendment violation, he failed to raise this issue in the state courts, and therefore it is procedurally-barred from review absent a showing of cause or prejudice or a miscarriage of justice. As to the procedural default, Petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, it is procedurally barred from consideration by this court and should be dismissed. *Murray*, 477 U.S. at 495–96.; *see* 28 U.S.C. 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been different.); *Wainwright v. Sykes*, 433 U.S. 72; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray v. Carrier*, 477 U.S. at 496); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray v. Carrier*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on this ground. Petitioner had a trial in which he raised no objection, had the opportunity to file a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise this issue and he failed to raise it, raise it properly, or preserve this issue for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve this specific issue.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case

must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

III.     Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry #18] be granted.

IT IS SO RECOMMENDED.

August 5, 2010                                    Shiva V. Hodges
Florence, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**